## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## CHARLESTON DIVISION

ALAN L. HICKS,

      Plaintiff,

v.                              Case No. 2:22-cv-00281

SANDRA MAY, *et al.*,

      Defendants.

## PROPOSED FINDINGS AND RECOMMENDATION

This matter is assigned to the Honorable John T. Copenhaver, Jr., Senior United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).  This matter is proceeding on Plaintiff's Complaint (ECF No. 1). Pending before the court is a Motion to Dismiss filed by Defendants Pamela Givens, Sandra May, and Wexford Health Sources, Inc. (ECF No. 15), and a Motion to Dismiss filed by Defendant Donald Ames (ECF No. 20).

I.    *PLAINTIFF'S ALLEGATIONS AND RELEVANT PROCEDURAL HISTORY*

The complaint alleges that, during a routine health check in February of 2022, Plaintiff, an inmate at the Mount Olive Correctional Complex ("MOCC"), told Dr. Charles Lye, a doctor then employed by Wexford Health Sources, Inc. ("Wexford"), that he had fluid build-up in his legs and was having trouble breathing.  (ECF No. 1 at 3).  Dr. Lye checked Plaintiff's medical records and discovered that he had been prescribed conflicting blood pressure medications.  (*Id.*)  Dr. Lye advised Plaintiff that he wanted to change his blood pressure medication to see if it helped with both the fluid retention and his

breathing problems, which Dr. Lye stated were indicative of congestive heart failure. (*Id.*) Dr. Lye prescribed 50 mg of Atenolol, which Plaintiff claimed made his blood pressure too low. (*Id.*) Although Plaintiff put in another sick call request to address that issue, it went unanswered while Plaintiff's housing unit was quarantined for COVID-19. (*Id.*) By the time his quarantine concluded, Dr. Lye no longer worked for Wexford. (*Id.*)

Plaintiff was subsequently seen in early April of 2022 by Defendant Sandra May ("May"), a Physician's Assistant for Wexford. (*Id.*) Plaintiff told May about his breathing issues and the problems with the Atenolol. (*Id.*) May changed Plaintiff's blood pressure prescription to 25 mg of Metoprolol, twice a day, and required Plaintiff to pick it up at the pill line for one month before he was permitted to keep in on his person in his cell ("KOP"). (*Id.*) May told Plaintiff she wanted to see if the change in medication helped his breathing issues. (*Id.*)

According to the complaint, May subsequently ordered a chest x-ray and advised Plaintiff that his lungs "looked excellent." (*Id.*) Plaintiff also allegedly "tested well" on ordered breathing tests. (*Id.*) May also ordered two EKGs. (*Id.*) The first, apparently, was inconclusive, but the second test revealed a heart murmur or arrhythmia, which resulted in Plaintiff being placed on a blood thinner. (*Id.*) However, Plaintiff alleges that the blood thinner caused him painful skin eruptions resembling burns and, after one month, he discontinued the medication against medical advice ("AMA"), despite May's alleged warning that he "could die of blood clots without it." (*Id.*)

Notwithstanding these actions, Plaintiff alleges that May did nothing to specifically treat his breathing problem. (*Id.*) Thus, Plaintiff completed a sick call request asking to speak with Defendant Pamela Givens, Wexford's Medical Administrator, about seeing another medical provider or receiving a referral for outside treatment. (*Id.* at 4).

2

However, Givens refused Plaintiff's requests and advised him that May would continue to treat him. (*Id.*) Plaintiff allegedly advised Givens that he would refuse treatment and threatened to bring legal action, claiming that the failure to provide treatment by a doctor violated Wexford's contract with the West Virginia Division of Corrections and Rehabilitation ("WVDCR"). (*Id.*) Givens allegedly abruptly ended the meeting, while May was standing outside her door listening. (*Id.*)

Plaintiff's complaint details additional facts about ordered blood work and alleged changes made in how and when he received his medication, which he claims was done by May in a harassing or retaliatory manner after his complaints about her treatment and his refusal to take the blood thinner. (*Id.* at 4-5). Although the specific timing is somewhat unclear from the facts alleged in the complaint, shortly after his meeting with Givens, and around the time of his filing of a grievance seeking referral to another health care provider (ECF No. 1, Attach. 1), May allegedly again required Plaintiff to pick up his blood pressure medication at the pill line, rather than having it KOP. (*Id.*) The complaint further acknowledges that May also prescribed an inhaler to be used at the pill line. (*Id.* at 4). The complaint also acknowledges that May told Plaintiff she was doing so to ensure that he was taking the medication properly. (*Id.*) Nonetheless, Plaintiff contends that this was done as a punishment, and he refused to go to the pill line to receive his medication. (*Id.*)

Although the timing thereof is also unclear from the facts contained in the complaint, Plaintiff further appears to allege that, at some point, May refused to renew his blood pressure medication and he went without it for about 10 days. (*Id.* at 5). Plaintiff's complaint alleges that "Defendant May's stopping of Plaintiff's crucial blood pressure medications reveals a pattern of professional misconduct that amounts to

medical malpractice, in that it places Plaintiff's life in peril" and, liberally construed, essentially alleges that May and Givens' conduct was deliberately indifferent to his serious medical needs.

The complaint further alleges that Plaintiff "made repeated attempts to talk to institutional investigators about this issue, "in an attempt to leave the Superintendent off the complaint." (*Id.* at 5). However, the complaint alleges no specific facts about Defendant Ames, the Superintendent at MOCC, and at best, demonstrates that Ames became aware of Plaintiff's medical complaints when he affirmed the denial of his grievance. Plaintiff seeks monetary damages from all Defendants and injunctive relief in the form of the "return of his blood pressure medications," the "discontinuance" of "harassment," and prompt treatment by a doctor for his breathing issues. (*Id.* at 6).

On May 18, 2023, Defendants Givens, May, and Wexford filed a Motion to Dismiss (ECF No. 15) asserting that Plaintiff's complaint fails to state a claim upon which relief can be granted against them. Likewise, on May 24, 2023, Defendant Ames filed a Motion to Dismiss (ECF No. 20) asserting that Plaintiff's complaint fails to state a plausible claim against him. Both motions are fully briefed and ripe for resolution.

Plaintiff's response brief (ECF No. 23) reiterates many of the facts pled in his complaint. However, it also addresses events that occurred after the complaint was filed. Specifically, Plaintiff alleges that, after filing the instant complaint, he suffered a heart attack and was taken to Charleston Area Medical Center ("CAMC") where he had a stent inserted. (*Id.* at 4). Upon his return to MOCC, Plaintiff was housed in the medical unit for over a month, and has subsequently been seen by another Wexford doctor, Dr. Mark White, who ordered an x-ray and an EKG. Dr. White noted that Plaintiff has an enlarged heart that has "remained unchanged since 3/22/22" and that Plaintiff's "atrial fib"

4

arrhythmia is "stable." (ECF No. 23, Ex. 1). Plaintiff's response further states that he "is transported to CAMC every few months for follow up care" and that his treating cardiologist has prescribed Lasix on a PRN basis "to reduce fluid build up." (*Id.* at 6). Plaintiff's response also suggests that prison transportation officers will not permit him to carry paperwork provided by hospital personnel. (*Id.* at 7).

Thus, Plaintiff "opines that during the course of his treatment Defendant May intentionally failed to mention that the x-ray revealed an enlarged heart, because that fact pointed to a problem which was serious enough to require outside medical care" and he questions how his earlier EKG could show an arrhythmia, but his later EKG, six months later, says it is "stable." (*Id.* at 4).

While Plaintiff appears to be relying on these subsequent facts to establish deliberate indifference to his serious medical needs by the Wexford Defendants, as these facts were not pled in the initial complaint, and Plaintiff has not moved to supplement or amend his complaint, the court may not consider those facts in support of the pending motion to dismiss. *See, e.g., Clement v. Spartanburg Steel Prod., Inc.*, No. 7:22-cv-173-MGL-KFM, 2022 WL 19266406, at *4 (D.S.C. Dec. 2, 2022), *report and recommendation adopted*, No. 7:22-cv-173-MGL-KFM, 2023 WL 2655183 (D.S.C. Mar. 27, 2023); *Adams v. 3D Sys., Inc.*, No. 0:19-cv-663-JMC, 2020 WL 1283712, at *2 (D.S.C. Mar. 18, 2020) ("[I]n ruling on a motion to dismiss under Rule 12(b)(6), the court may only look to the allegations of the complaint . . . [and] the Court will not consider any additional facts that were not alleged in the complaint.") (citations and internal quotation marks omitted); *Carroll v. United Parcel Serv., Inc.*, No. 1:17-cv-3108-DCC-JDA, 2018 WL 4126450, at *4 (D.S.C. Mar. 15, 2018) ("On a motion to dismiss, the Court will consider only the allegations included in Plaintiff's Complaint.") (internal citations omitted), *report and*

*recommendation adopted in relevant part by* 2018 WL 4111017 (D.S.C. Aug. 29, 2018); *El Hadidi v. Intracoastal Land Sales, Inc.*, No. 4:12-cv-00535-RBH, 2013 WL 625575, at *3 n.3 (D.S.C. Feb. 20, 2013) ("The Court, however, in ruling on a motion to dismiss filed under Rule 12(b)(6), may only look to the allegations of the complaint. Accordingly, the Court will not consider any additional facts that were not alleged in the complaint.").

## II.    STANDARD OF REVIEW

In general, a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (stating that this requirement exists "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))). However, to withstand a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must plead enough facts "to state a claim to relief that is plausible on its face." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Stated another way, the factual allegations in the complaint "must be sufficient 'to raise a right to relief above the speculative level.'" *Woods v. City of Greensboro*, 855 F.3d 639, 647 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). A complaint that alleges enough facts "to satisfy the elements of a cause of action created by [the relevant] statute" will survive a motion to dismiss. *Id.* at 648 (quoting *McCleary-Evans*, 780 F.3d at 585).

In evaluating the sufficiency of a complaint, this Court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. This Court then "assume[s] the[] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* Review of the complaint is "a context-specific task that requires [this Court] to draw on its judicial experience and common sense." *Id.* "[T]o satisfy the plausibility standard, a plaintiff is not required to plead factual allegations in great detail, but the allegations must contain sufficient factual heft to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of that which is alleged." *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017) (internal quotation marks omitted). This Court construes a *pro se* plaintiff's allegations "liberally," but the complaint must nonetheless "contain enough facts to state a claim for relief that is plausible on its face." *Thomas v. Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016).

## III.   DISCUSSION

### A.   The complaint fails to state a plausible constitutional claim against Wexford.

Although not explicitly stated therein, Plaintiff's complaint, liberally construed, alleges claims of deliberate indifference to his serious medical need by all Defendants, in violation of the Eighth Amendment's guarantee against cruel and unusual punishment, as well as a potential First Amendment claim grounded in retaliation against Defendant May. The vehicle for such claims is section 1983 of Title 42 of the United States Code, which provides in pertinent part:

> Every person, who under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any

7

> citizen of the United States or other person within the jurisdiction thereof
> to the deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action at law,
> suit in equity, or other proper proceedings for redress . . . .

42 U.S.C. § 1983.  While not in itself a source of substantive rights, section 1983 provides a "method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes."  *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).

To successfully establish a section 1983 claim, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a *person* acting under color of state law."  *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011) (emphasis added); *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 60 (1989); *Rendall-Baker v. Kohn*, 547 U.S. 830, 838 (1982).  Because Wexford is a contracted medical provider for the WVDCR, a state agency with oversight of MOCC, the deliberate indifference standard is applicable to the conduct of Wexford and its employees.  *West v. Atkins*, 487 U.S. 42 (1998) (explaining that a private entity which contracts with the state to provide medical services acts "under color of state law").  However, "[a] private corporation is liable under § 1983 *only* when an official policy or custom of the corporation causes the alleged deprivation of federal rights."  *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999) (emphasis in original) (extending "municipal liability" requirements of *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), to § 1983 liability of private corporations); *see also Motto v. Corr. Med. Servs.*, Case No. 5:06-cv-00163, 2007 WL 2897854 (S.D.W. Va., Sept. 27, 2007) (Johnston, J.) (unpublished); *Price v. Corr. Med. Servs.*, Case No. 2:08-cv-00259, 2008 WL 5377779 (S.D.W. Va., Dec. 18, 2008) (Faber, J. unpublished); *Howell v. Evans*,

922F.2d 712, 723-34 (11th Cir. 1991); *Nelson v. Prison Health Services, Inc.*, 9991 F. Supp. 1452, 1465 (M.D. Fla. 1997).

As noted by the Wexford Defendants, the liability of a private corporation under § 1983 is analogous to municipal liability as set forth in *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978). *See, e.g., Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982) ("In [*Monell*,] the Supreme Court held that a municipal corporation cannot be saddled with section 1983 liability via respondeat superior alone. We see this holding as equally applicable to the liability of private corporations."). (ECF No. 16 at 6). Thus, a plaintiff must sufficiently plead facts, which if true, establish the existence of a corporate policy or custom that allegedly caused injury to the plaintiff and "a single instance of the complained-of conduct is insufficient to establish that the conduct was undertaken pursuant to policy." (*Id.* at 6-7) (citing *Revene v. Charles Cnty. Comm'rs.*, 882 F.2d 870, 875 (4th Cir. 1989) and *City of Okla. City v. Tuttle*, 471 U.S. 808, 823-24 (1985).

The Wexford Defendants assert that there are no factual allegations in the complaint that can plausibly establish that Wexford has a policy or custom that led to his constitutional injury. Their memorandum of law asserts:

> Here, the Plaintiff has failed to make adequate factual allegations in this regard. Nowhere in his Complaint does the Plaintiff allege that his alleged injuries were the result of a corporate policy maintained by Wexford. Rather, his only allegations portray single instances of conduct – allegedly failing to treat him appropriately for his breathing and blood pressure issues - with no perceivable relationship to an alleged corporate policy. This is plainly insufficient under *Monell* and should subject his § 1983 claim against Wexford to dismissal.

(*Id.* at 7).

Plaintiff's response to the Wexford Defendants' motion asserts that "Wexford has a policy of making all PRN [meaning "as needed"] medication KOP ["keep on person"]" and that Wexford has continued to allow Defendant May to "punish[] the Plaintiff by claiming that he is irresponsible in taking some KOP medications while allowing access to others." (ECF No. 23 at 7).[1] His response further asserts that he "was deprived of medical care that was covered under Wexford's contract, including "the failure of Defendant Wexford to have a Doctor available[.]" (*Id.* at 5).

To the extent that Plaintiff's claim against Wexford itself is grounded in the failure to make a doctor available to treat him, the undersigned has not located any binding precedent that would support a plausible Eighth Amendment claim on such a basis. A prisoner has no constitutional right to the treatment or provider of his choice. *See Estelle*, 429 U.S. at 105-06 ("[i]t is well established that an inmate has no constitutional right to have the treatment he prefers or the best medical treatment available."); *see also Gross v. Dudley*, No. 3:21-cv-805-HEH, 2022 WL 16922819, at *5 (E.D. Va. Nov. 14, 2022) ("an inmate not receiving the optimal level of treatment or the treatment they prefer cannot be the basis for a deliberate indifference claim."); *Goff v. Bechtold*, 632 F. Supp. 697, 699 (S.D.W. Va. 1986) ("Denial of a preferred course of treatment—if in fact such occurred here—does not infringe a constitutional right." (citing *Layne v. Vinzant,* 657 F.2d 468,

---

[1] Plaintiff's response brief asserts that "[t]he combination of three factors: (1) the transportation officer's refusal to allow prisoners to except [sic] paperwork from hospital personnel; (2) Defendant May's act of denying Plaintiff all allowable medications KOP; and (3) Defendant Wexford's policy of making all PRN medications KOP, has prevented the Plaintiff not only from taking an important medication, it prevented the Plaintiff from knowing such medication (Lasix) [as a treatment for his breathing problem] was available, until only days before this [response]." (ECF No. 23 at 7). However, as noted above, this assertion addresses facts that are not part of the initial complaint and Plaintiff has not moved for leave to amend his complaint to include them. Thus, the undersigned will not consider the same in its analysis of the sufficiency of the initial complaint.

473 (1st Cir. 1981) and *Gahagen v. Penn. Bd. of Probation and Parole,* 444 F. Supp. 1326

(E.D. Pa. 1978)); *Vinnedge v. Gibbs*, 550 F.2d 926 (4th Cir. 1977).

Moreover, to the extent that Plaintiff claims that Wexford has a policy allowing

prisoners to keep certain medications on their person or in their cell, that allegation also

does not support a plausible *Monell* claim against Wexford.   First, as noted by the

Wexford Defendants in their reply brief, Plaintiff's assertion that "Wexford has a policy of

administering all PRN medications KOP" and that May essentially ignored or violated

that policy is insufficient to state a valid claim against Wexford.   (ECF No. 28 at 3-4).

Their reply further asserts:

> This sole allegation in Plaintiff's Response does not allege that an official
> policy or custom of Wexford harmed Plaintiff.  Instead, Plaintiff alleges that
> there is a general policy that PRN medications are KOP and that Defendant
> May allegedly did not follow this policy for one of Plaintiff's medications,
> whereas his other medications remained KOP and Defendant May did not
> change those.   This clearly does not satisfy the legal requirements for
> asserting a deliberate indifference claim against Wexford as the harms
> alleged by Plaintiff would not then be caused by an official policy or custom
> of Wexford as Plaintiff clearly states that the harm came from not following
> the alleged policy.    Additionally, Plaintiff's allegation that the one
> medication being changed from KOP, whereas his others were not, is more
> reflective of a single instance of complained-of conduct.  Accordingly, it is
> proper to dismiss Wexford from this action.

(*Id.* at 4).

Here, the complaint fails to sufficiently allege that any policy or custom of Wexford

led to his actual injury.  The most basic requirement for a successful *Monell* claim is to

connect the alleged violation of a federal right to an official policy or custom of the

defendant.  *See Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999); *see also Connick v.*

*Thompson*, 563 U.S. 51, 61 (2011) ("Official municipal policy includes the decisions of a

government's lawmakers, the acts of its policymaking officials, and practices so persistent

and widespread as to practically have the force of law.").  A *Monell* "custom" must be

based on a practice that is "so widespread as to have the force of law." *Bd. of Cnty. Comm'rs of Bryan Cnty. Okla. v. Brown*, 520 U.S. 397, 404 (1997); *see also Graening v. Wexford Health Sources, Inc.*, No. 1:20-cv-00400, 2022 WL 2070633, at *4 (S.D.W. Va. June 8, 2022) (Faber, S.J.).  Plaintiff's complaint is devoid of any such allegations and the facts contained therein are far too thin and conclusory to establish liability against Wexford under a *Monell* theory.   Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff's complaint fails to state a plausible Eighth Amendment claim against Wexford.

### B.      The complaint fails to state a plausible Eighth Amendment claim against either May or Givens.

As noted by the Wexford Defendants' brief, deliberate indifference to a prisoner's serious medical needs constitutes the type of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.  *Farmer v. Brennan*, 511 U.S. 825, 834-37 (1994); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  But not every "claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Estelle*, 429 U.S. at 105.  To sustain an Eighth Amendment claim, a prisoner must show two things: (1) "the deprivation must be, objectively, 'sufficiently serious;'" that is, "denial of 'the minimal civilized measure of life's necessities;'" and (2) the prison official had a "'sufficiently culpable state of mind;'" that is, "'deliberate indifference' to inmate health or safety." *Farmer*, 511 U.S. at 834. (Citations omitted.)  The Supreme Court rejected an argument that an objective test of deliberate indifference be established.

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990); *see also Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986) (collecting cases). "Serious medical needs" are those which have been diagnosed by a physician as mandating treatment or that are so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Gaudreault v. Munic. of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990).

> Deliberate indifference may be demonstrated by either actual intent or reckless disregard. *See Benson v. Cady*, 761 F.2d 335, 339 (7th Cir. 1985). A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position. *See id.* Nevertheless, mere negligence or malpractice does not violate the Eighth Amendment. *See Estelle*, 429 U.S. at 106.

*Miltier*, 896 F.2d at 851-852.

The burden of demonstrating deliberate indifference to a serious medical need is very high. It is well-settled that:

> A medical need serious enough to give rise to a constitutional claim involves a condition that places the inmate at a substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment perpetuates severe pain. *See Farmer*, 511 U.S. at 832-35; *Sosebee v. Murphy*, 797 F.2d 182-83 (4th Cir. 1986); *Loe v. Armistead*, 582 F.2d 1291, 1296-97 (4th Cir. 1978).

*Rush v. VanDevander*, 2008 WL 495651 (W.D. Va., Feb. 21, 2008); *Banks v. Green Rock Correctional Center Medical Dept.*, 2007 WL 2903673 (W.D. Va., Oct. 3, 2007). However, negligence is not sufficient to demonstrate deliberate indifference to a serious medical need. *See Webster v. Jones*, 554 F.2d 1285 (4th Cir. 1977).

Likewise, disagreements between a health care provider and the inmate over a diagnosis and the proper course of treatment are not sufficient to support a deliberate indifference claim, and questions of medical judgment are generally not subject to judicial review. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975). As noted by the Fourth Circuit, an inmate is not entitled to unqualified access to health care and treatment may be limited to what is medically necessary and not "that which may be considered merely desirable" to the inmate. *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977). The undersigned will address Plaintiff's claims against both Defendants May and Givens under these standards.

       1.    Defendant May.

The Wexford Defendants' motion to dismiss asserts that "it is unclear" what actions of Defendant May Plaintiff is claiming were deliberately indifferent to his serious medical needs. As noted therein, a fair reading of the complaint demonstrates that, in response to his complaints concerning his blood pressure and breathing issues, May changed his blood pressure medication, ordered a chest x-ray, breathing tests, and two EKGs, prescribed a blood thinner when an arrhythmia was discovered, and also prescribed an inhaler to help with his breathing issues. (ECF No. 16 at 2-3, 9). Their motion further asserts that, May merely changed the method by which Plaintiff's medication was to be provided to him, and by his own admission, he chose not to take his medication. Thus, May did not prohibit him from obtaining it in violation of the Eighth Amendment. (*Id.* at 10).

The Wexford Defendants assert that "Plaintiff sets forth no facts in the Complaint to establish that these actions were 'so grossly incompetent, inadequate, or excessive to shock the conscience or to be intolerable to fundamental fairness[.]" (*Id.* at 9). Moreover,

they assert that, at best, these allegations establish a "mere disagreement between Plaintiff and Ms. May regarding the course of treatment . . . [which is] insufficient to support a valid Eighth Amendment claim." (*Id.*)

Plaintiff's response shifts the focus of his Eighth Amendment claim against Defendant May by asserting that she "intentionally failed" to inform him that he had an enlarged heart, which he presumes was apparent in the chest x-ray May ordered in March or April of 2022 and "pointed to a problem which was serious enough to require outside medical care" [that being that an enlarged heart is "a component of congestive heart failure."]. (ECF No. 23 at 4). Plaintiff's response asserts, for the first time, that "Defendant's failure to treat him resulted in the Plaintiff suffering a Heart Attack from congestive heart failure, after filing this complaint." (*Id.* at 7). Here, again, however, Plaintiff is relying on facts that were not contained in his complaint, and he has not moved for leave to amend his complaint to include the same, so those facts should not presently be considered by the court.

The Wexford Defendants' reply brief asserts that Plaintiff's allegation that May did not comment about, or provide treatment for, Plaintiff's enlarged heart, "ignores the fact Plaintiff asserts that Dr. Lye had already diagnosed Plaintiff with congestive heart failure and ignores the fact that Dr. Lye decided to hold off treating Plaintiffs congestive heart failure until after Plaintiff had tried a different medication." (ECF No. 28 at 6). Likewise, the Wexford Defendants assert that Plaintiff has made "no meaningful argument that Defendant May moving his medication from KOP to the Pill Line rises to the level of a constitutional violation." (*Id.*) The undersigned agrees that these facts do not give rise to an Eighth Amendment violation.

Based upon the facts contained in the complaint, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff has failed to state a plausible Eighth Amendment claim of deliberate indifference to a serious medical need against Defendant May. Even presuming that Plaintiff's blood pressure, breathing, and heart issues (all of which appear to be symptoms of his diagnosed congestive heart failure) are serious health issues, the facts alleged in the initial complaint, taken as true, do not sufficiently indicate treatment that was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness," and state no more than Plaintiff's disagreement with May's medical judgment concerning his course of treatment. As noted above, a prisoner has no constitutional right to the treatment or provider of his choice, and the denial of a preferred course of treatment does not violate the Eighth Amendment.

        2.    Defendant Givens.

Plaintiff's claim against Pamela Givens appears to be grounded in her refusal, as Health Services Administrator, to refer him to a medical provider other than May, and specifically for treatment by a doctor. The Wexford Defendants' motion documents assert that "Plaintiff's only argument regarding Defendant Givens is that Plaintiff grieved the alleged failure of Wexford having a doctor available for Plaintiff and that Defendant Givens knowingly allowed this." (ECF No. 16 at 10-11; ECF No. 28 at 4). Their motion further asserts that this fact does not give rise to a plausible Eighth Amendment claim because, as noted above, a prisoner has no constitutional right to his preferred course of treatment. *See Estelle*, 429 U.S. at 105-06. Defendants further assert that Plaintiff's allegations against Givens amount to nothing more than an improper claim of *respondeat superior* to hold her liable for the conduct of May. (ECF No. 16 at 11). However, as Defendants further note, *respondeat superior* has no application in a § 1983 suit. *Wright*

*v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985).  (*Id.*)

The undersigned proposes that the presiding District Judge **FIND** that Plaintiff's complaint fails to state a plausible Eighth Amendment deliberate indifference claim against Defendant Givens.  The complaint alleges nothing beyond her role in denying Plaintiff's grievance seeking treatment by an alternative provider, which in and of itself is insufficient to establish Eighth Amendment liability.  *See, e.g., Lowe v. Matheney*, No. 2:13-cv-22416, 2015 WL 5795867 *9 (S.D. W. Va. Sept. 30, 2015) (Goodwin, J.) (inadequacy of allegations involving supervisory liability claim based upon denial of grievances); *see also Larson v. Meek*, 240 F. App'x 777, 780 (10th Cir. 2007); *Ferris v. Jones*, No. 4:14-cv-454, 2015 WL 4668297, at *9 (N.D. Fla. Aug. 5, 2015).

### C.  First Amendment retaliation claim against May.

While Plaintiff's complaint fails to state any plausible violation of the Eighth Amendment, the undersigned identifies a separate potential First Amendment claim against Defendant May grounded in alleged retaliation for his grievances and threat of filing a legal complaint, which warrants some discussion.  It is well-established that prison officials may not retaliate against prisoners for exercising their right to redress prison grievances.  *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 544-45 (4th Cir. 2017); *Hudspeth v. Figgins*, 584 F.2d 1345, 1348 (4th Cir. 1978); *see also Hudson v. Palmer*, 468 U.S. 517, 523 (1984) (recognizing First Amendment right to petition for redress of grievances).  It stands to reason that this prohibition would extend to private medical contractors for the State, like Wexford's employees.

To state a plausible First Amendment retaliation claim, Plaintiff must establish: (1) that he engaged in protected First Amendment activity; (2) that a Defendant took some action that adversely affected his First Amendment rights; and (3) that there was a causal

17

relationship between his protected activity and Defendant's conduct. *Martin v. Duffy*, 977 F.3d 294, 298–299 (4th Cir. 2020) ("*Martin II*"); *see also Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005). Where retaliatory conduct would "deter a person of ordinary firmness from the exercise of First Amendment rights," the claim may proceed. *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017) ("*Martin I*") (quoting *Constantine*, 411 F.3d at 500).

However, retaliation claims in the prison context "should be treated with skepticism." S*ee Cochran v. Morris,* 73 F.3d 1310, 1317 (4th Cir. 1996) (finding that the district court did not abuse its discretion in dismissing plaintiff's claims of retaliation where they lacked a nexus to the misconduct alleged); *see also Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) (To survive summary dismissal, a plaintiff asserting First Amendment retaliation claims must advance non-conclusory allegations establishing each element of such claim); *accord Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003). "[T]he plaintiff must show that the defendant's retaliatory action was substantially motivated by the plaintiff's decision to exercise a constitutionally protected right, and that the action impaired the exercise of that right. *See ACLU v. Wicomico Cnty.*, 999 F.2d 780, 785 (4th Cir. 1993). As recently addressed in *Martin II*, however, the Fourth Circuit has recognized that, once a plaintiff establishes a *prima facie* case of retaliation, a defendant may rebut that presumption by demonstrating that "it would have reached the same decision . . . in the absence of the protected conduct." 977 F.3d at 299. This is known as the "same decision" test. The *Martin II* Court further stated:

> [C]ourts must take care to "afford appropriate deference and flexibility to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Pratt v. Rowland*, 65 F.3d 802, 807

(9th Cir. 1995) (citing *Sandin v. Conner*, 515 U.S. 472, 482, 115 S. Ct. 2293, 132 L. Ed.2d 418 (1995)). But the obligation to view prison officials' explanations charitably does not free officials from providing any explanation at all. Once a plaintiff establishes his protected conduct was a substantial or motivating factor in the defendant's decision to take adverse action, the defendant is appropriately tasked with explaining why her decision was not animated by retaliatory motives.

*Id.* at 301.

Here, a liberal reading of Claim Three of Plaintiff's complaint suggests that he is asserting that Defendant May acted in a harassing or retaliatory manner by requiring him to receive his blood pressure medication and his inhaler at the pill line, instead of having them KOP. Plaintiff alleges that, after his complaint to Defendant Givens about seeing another health care provider, which was allegedly overheard by May, and also after filing his grievance seeking the same, May ordered that Plaintiff was to receive his blood pressure medication and inhaler at the pill line, rather than KOP, and, at some point thereafter, refused to renew his medication. The Wexford Defendants' motion documents did not address these facts in the context of an alleged First Amendment violation. The undersigned proposes that the presiding District Judge **FIND** that the complaint alleges facts, which taken as true, could support a First Amendment retaliation claim, and that such claim should be further addressed by the parties.

### D.    The complaint fails to state a plausible claim against Ames.

Plaintiff's complaint also names Donnie Ames, the Superintendent of MOCC, as a defendant. However, the complaint contains few facts concerning specific conduct by Ames. At most, the complaint alleges that Ames affirmed the denial of his grievance concerning his medical treatment on May 12, 2022, by stating "You have refused follow-ups and have not been taking your medication. You should follow plan that was set-forth by the provider." (ECF No. 1 at 2 and Ex. 1). Plaintiff's complaint alleges that Ames

"ignored completely" the facts within the grievance. (*Id.* at 2).

Ames' motion asserts that, even presuming that Plaintiff's medical condition satisfies the objective prong of the Eighth Amendment deliberate indifference standard, he cannot meet the "high bar" of the subjective standard with respect to Defendant Ames, a non-medical supervisory prison official. (ECF No. 21 at 6). Generally, a prison official, such as Ames, is justified to rely on the opinions and decisions of medical personnel. *See, e.g., Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008); *Miltier v. Beorn*, 896 F.2d 848, 854-55 (4th Cir. 1990). As further noted by the Court in *Iko*:

> If a prisoner is under the care of medical experts . . ., a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's case would strain this division of labor.

*Id.* at 242 (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)). Thus, [i]n order to succeed on a medical claim against non-medical personnel, plaintiff must establish that non-medical personnel were personally involved in a denial of treatment, deliberately interfered with treatment, or tacitly authorized or were indifferent to a prison physician's conduct." *Vanderhart v. Felts*, No. 5:10-cv-0492, 2012 WL 727647 (S.D.W. Va. Feb. 15, 2012) (VanDervort, M.J.), *adopted* 2012 WL 748862 (S.D.W. Va. Mar. 6, 2012) (Berger, J.) (citing *Lewis v. Angelone*, 926 F. Supp. 69, 73 (W.D. Va. 1996).

Ames' motion documents assert that Plaintiff was under the care of medical professionals at all relevant times herein and that his complaint challenges decisions made by medical personnel concerning his treatment. (ECF No. 21 at 7). His memorandum of law further asserts:

> Under the above case law, this Defendant was therefore justified to hold a belief that these medical professionals knew better than himself what the appropriate treatment decisions were.  In fact, the only indication that this Defendant was even aware that the Plaintiff was unsatisfied with his treatment is a single grievance attached to the Complaint, which requests as relief that he be referred to a doctor and no longer treated by Defendant May.  This single grievance does not show evidence of the type of subjective knowledge necessary to impute deliberate indifference to a non-medical supervisory prison official.    The Plaintiff's Complaint and attached grievance essentially claims that he was being prescribed the wrong medications, and that his breathing problem was being misdiagnosed.  When he became dissatisfied with Defendant May for those reasons, he began refusing treatment.  Nothing in the Complaint or the grievance suggests that this Defendant involved himself in or interfered with the Plaintiff's treatment, nor that he has the medical expertise to second-guess Defendant May's treatment decisions.  Accordingly, the Plaintiff has failed to meet the subjective element of the deliberate indifference analysis applicable to a non-medical prison officials in cases involving adequacy of medical care, requiring dismissal.

(*Id.* at 7-8).

Plaintiff's response to Ames' motion asserts that his complaint states a plausible Eighth Amendment claim against Ames due to "the institution's refusal to address the other defendants' failure to meet their contractual obligations."  (ECF No. 24 at 1).  Plaintiff further asserts that his grievance stated that he told his case manager "to get [him] a pass to see an investigator . . . because this involves a legal action against a company with contractual obligations to the Institution, thereby requiring [him] to name the Superintendent and the Institution as Defendants."  (*Id.* at 5, citing ECF No. 1, Ex. 1 at 1-2).  In essence, Plaintiff claims that, in denying his grievance, Ames ignored the fact that the contracted medical provider did not have a doctor on site at that time, which is allegedly required by its contract, and, thus, "knowingly allowed this deprivation to take place." (*Id.* at 5-6).

Ames' reply brief asserts that Plaintiff's argument "patently misunderstands the state of the law on imposing Eighth Amendment liability on non-medical supervisory

correctional personnel for the decisions of medical providers." (ECF No. 27 at 1). The reply further asserts that Plaintiff has not alleged that Ames interfered with his medical treatment, but rather that the denial of his grievance was "tantamount to tacit authorization or indifference to the conduct of the medical personnel[.]" (*Id.* at 2).

As noted by Ames, Plaintiff has not presented any facts "that would suggest that the treatment decisions Plaintiff complains of in his grievance are so obviously wrong that a layperson like this Defendant would be deliberately indifferent by trusting the expertise of medical providers and declining to override their decisions." (*Id.* at 2-3). The undersigned has been unable to locate any binding authority to suggest that liability of a non-medical supervisory prison official may be grounded in the alleged breach of a contract by the medical personnel against whom Plaintiff has also not sufficiently stated an Eighth Amendment violation. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff's complaint fails to state a plausible Eighth Amendment claim against Defendant Ames.

### III.    RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the Motion to Dismiss filed by Pamela Givens, Sandra May, and Wexford Health Sources, Inc. (ECF No. 15) with respect to the Eighth Amendment deliberate indifference claims pled against them, but **DENY** the same with respect to the First Amendment retaliation claim stated against Sandra May. It is further respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the Motion to Dismiss filed by Donnie Ames (ECF No. 20).

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr.,

Senior United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be provided to the opposing parties and Judge Copenhaver.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy of the same to Plaintiff and to transmit a copy to counsel of record.

January 5, 2024

Dwane L. Tinsley
United States Magistrate Judge