UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

ALAN L. HICKS,

       Plaintiff,

v.                          Civil Action No. 2:22-cv-00281

SANDRA MAY, Physician's
Assistant, PAMELA GIVENS,
Hospital Administrator,
WEXFORD HEALTH SERVICES,
INC., DONNIE AMES,
Superintendent, Mount Olive
Correctional Complex,

       Defendants.

<u>ORDER</u>

Pending are defendants May, Givens, and Wexford Health Services, Inc.'s, Motion to Dismiss, ECF No. 15; defendant Donnie Ames' Motion to Dismiss, ECF No. 20; and defendant May's objections, ECF No. 38, and plaintiff's objections, ECF No. 42, to Magistrate Judge Tinsley's Proposed Findings and Recommendation, ECF No. 37.

### I.  Factual Background

The complaint alleges the following facts, as articulated in the Proposed Findings and Recommendation.

During a routine health check in February of 2022, plaintiff, an inmate at the Mount Olive Correctional Complex ("MOCC"), told Dr. Charles Lye, a doctor then employed by Wexford Health Sources, Inc. ("Wexford"), that he had fluid build-up in his legs and was having trouble breathing. Complaint, at 3, ECF No. 1 ("Complaint").  Dr. Lye checked plaintiff's medical records and discovered that he had been prescribed conflicting blood pressure medications.  Id.  Dr. Lye advised plaintiff that he wanted to change his blood pressure medication to see if it helped with both the fluid retention and his breathing problems, which Dr. Lye stated were indicative of congestive heart failure.  Id.  Dr. Lye prescribed 50 mg of Atenolol, which plaintiff claims made his blood pressure too low.  Id.  Although plaintiff put in another sick call request to address that issue, it went unanswered while plaintiff's housing unit was quarantined for COVID-19.  Id.  By the time his quarantine concluded, Dr. Lye no longer worked for Wexford.  Id.

Plaintiff was subsequently seen in early April of 2022 by Defendant Sandra May ("May"), a Physician's Assistant for Wexford.  Id.  Plaintiff told May about his breathing issues and the problems with the Atenolol.  Id.  May changed plaintiff's blood pressure prescription to 25 mg of Metoprolol, twice a day, and required plaintiff to pick it up at the pill line for one

month before he was permitted to keep it on his person ("KOP")
in his cell.  Id.  May told plaintiff she wanted to see if the
change in medication helped his breathing issues.  Id.

May subsequently ordered a chest x-ray and advised
plaintiff that his lungs "looked excellent."  Id.  Plaintiff
also allegedly "tested well" on ordered breathing tests.  Id.
May also ordered two EKGs.  Id.  The first, apparently, was
inconclusive, but the second test revealed a heart murmur or
arrhythmia, which resulted in plaintiff being placed on a blood
thinner.  Id.  Plaintiff alleges that the blood thinner caused
him painful skin eruptions resembling burns and, after one
month, he discontinued the medication, despite May's alleged
warning that he "could die of blood clots without it."  Id.

Notwithstanding these actions, plaintiff alleges that
May did nothing to specifically treat his breathing problem.
Id.  Thus, plaintiff "submitted a sick call requesting to" speak
with Defendant Pamela Givens ("Givens"), Wexford's Medical
Administrator, about seeing another medical provider or
receiving a referral for outside treatment.  Id.  Givens refused
plaintiff's requests and advised him that May would continue to
treat him.  Id.  Plaintiff allegedly advised Givens that he
would refuse treatment and threatened to bring legal action,
claiming that the failure to provide treatment by a doctor

3

violated Wexford's contract with the West Virginia Division of Corrections and Rehabilitation ("WVDCR").  Id.  During the meeting of plaintiff and Givens, plaintiff "noticed" May "standing outside the door" and listening in.  Id.  Plaintiff requested an officer close the door, but Givens allegedly abruptly ended the meeting.  Id.

Plaintiff's complaint details additional facts about ordered blood work and alleged changes made in how and when he received his medication, which he claims were done by May in a harassing or retaliatory manner after his complaints about her treatment and his refusal to take the blood thinner.  Id., at 4-5.  The day after his meeting with Givens, May allegedly again required plaintiff to pick up his "blood pressure medications"[1] at the pill line, rather than permitting him to keep them on his person in his cell.  Id.  Shortly thereafter, "[p]laintiff was given a pass for blood work," and he "suspected [May] was making another attempt to harass."  Id. at 5.  Plaintiff was told that "May had ordered the blood work."  Id.

On May 9, 2024, Plaintiff filed a "WVDCR Inmate Grievance Form," in which he stated the following as the nature of his grievance: "Refer me to a Doctor for health ca[re] and

---

[1] It is not clear from the complaint which particular medication May required plaintiff to pick up at the pill line.

prevent Sandra May from harassing me, by taking aw[ay] my KOP's. Have my breathing problem addressed." Grievance Form, ECF No. 1-1, at 1. The complaint acknowledges that May also prescribed an inhaler to be used at the pill line. Complaint, at 5. The complaint notes that May told plaintiff she was requiring the pill line pickup to ensure that he was taking the medication properly. Id. Nonetheless, plaintiff contends that this was done as a punishment, and he refused to go to the pill line to receive his medication. Id.

The following allegations were confusingly pled, and the court is unable to decidedly discern their sequence and import. Plaintiff alleges that on "May 17, 2022, when [p]laintiff's other KOP's (sic) were renewed, the blood pressure medications were also returned to KOP status." Id. Plaintiff suspected "May was trying to trap him somehow," but "[a]fter approximately ten days without blood pressure medications," plaintiff was "assured that his blood pressure medication was changed to [KOP]." Id. Plaintiff then alleges that "[w]hen those medications[2] were due to be renewed,"[3] he was told "only [May] could renew those." Id. Though it is unclear whether May ever actually refused to renew his "blood pressure medications,"

---

[2] Plaintiff seemingly refers here to his "blood pressure medications," but does not clarify which ones.
[3] Based on context, this seemingly occurred between May 17, 2022, and June 10, 2022, but plaintiff does not clarify.

plaintiff alleges that "Defendant May's stopping[4] of plaintiff's crucial blood pressure medications reveals a pattern of professional misconduct that amounts to medical malpractice, in that it places plaintiff's life in peril," though plaintiff offers no support for that assertion.  Id.  Liberally construed, he essentially alleges that May and Givens' conduct was deliberately indifferent to his serious medical needs.  Id.

The complaint further alleges that plaintiff "made repeated attempts to talk to institutional investigators" about this issue, "in an attempt to leave the Superintendent off the complaint."  Id.  The complaint alleges no specific facts about Defendant Ames, the Superintendent at MOCC, and at best, demonstrates that Ames became aware of plaintiff's medical complaints when Ames affirmed the denial of his grievance. Plaintiff seeks monetary damages from all Defendants and injunctive relief in the form of the "return of his blood pressure medications," the "discontinuance" of "harassment," and prompt treatment by a doctor for his breathing issues.  Id., at 6.

## II.  Procedural History

---

[4] It is unclear whether this "stopping" refers to a refusal to renew prescriptions or simply a requirement that plaintiff take his medications at the pill line, which he refused to do.

Plaintiff filed the instant complaint on July 11, 2022.  See ECF No. 1.  Pursuant to the Standing Order in re: Assignment and Referral of Civil Actions and Matters to Magistrate Judges, it was referred to Magistrate Judge Tinsley. See ECF No. 2.

On May 18, 2023, defendants Givens, May, and Wexford (collectively, "Wexford Defendants") timely filed a joint Motion to Dismiss.  See ECF Nos. 15, 16 ("Wexford Mot. Dismiss"). Therein, they argue that plaintiff failed to state a § 1983 claim against Wexford because he failed to allege the existence of an unconstitutional policy or custom, as required by Monell v. Department of Social Services, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).  See Wexford Mot. Dismiss, at 5-7. Wexford Defendants further argued that he failed to state a § 1983 claim for deliberate indifference in violation of the Eighth Amendment against defendants May or Givens.  See id., at 7-11.

On May 24, 2023, defendant Donnie Ames timely filed his Motion to Dismiss.  See ECF Nos. 20, 21 ("Ames Mot. Dismiss").  Defendant Ames argued that plaintiff failed to state a § 1983 claim that defendant Ames violated the Eighth Amendment with respect to the plaintiff.  See Ames Mot. Dismiss.

Plaintiff timely filed responses to each motion to dismiss on June 16, 2023.  See ECF No. 23 ("Pl. Resp. to Wexford"); ECF No. 24 ("Pl. Resp. to Ames").  Therein, plaintiff re-alleges many of the same facts stated in his initial complaint.  See Pl. Resp. to Wexford, 2-4; Pl. Resp. to Ames, 2-4.  Plaintiff also introduces and relies on events that occurred after the complaint was filed.

Wexford Defendants and Ames timely filed replies, ECF No. 27 (Ames's reply); ECF No. 28 (Wexford Defendants' reply), and the motions became ripe for adjudication.

Pursuant to 28 U.S.C. § 636(b), on January 5, 2024, Magistrate Judge Tinsley issued his Proposed Findings and Recommendation ("PF&R"), recommending granting the motions to dismiss with respect to plaintiff's Eighth Amendment claims but denying them with respect to an identified § 1983 claim for retaliation against plaintiff by defendant May in violation of the First Amendment of the United States Constitution.  See PF&R at 22, ECF No. 37.  Additionally, the PF&R notes that plaintiff relied on facts beyond the scope of the complaint in his responses, and it made clear that it could not consider facts that plaintiff alleges occurred after he filed the complaint because he has not moved to supplement or amend the complaint. PF&R at 5.

On January 16, 2024, defendant May timely filed her objections to the PF&R.  <u>See</u> ECF No. 38 ("May Obj.").

After an extension of the deadline to object, on February 7, 2024, plaintiff timely filed his objections to the PF&R.  <u>See</u> ECF No. 42 ("Pl. Obj.").  Additionally, on February 7, 2024, plaintiff filed a "Motion to Amend Plaintiff's Complaint by Supplement," ECF No. 41, wherein he sought to supplement his complaint by alleging certain events that transpired after he filed the complaint, as well as some that transpired after he responded to the motions to dismiss.  <u>See</u> ECF No. 43.  The court also notes that plaintiff used many of those same additional facts and allegations in his objections to the PF&R, which, for reasons articulated below, the court cannot consider at this stage.  Plaintiff's Motion to Amend is presently referred to the Magistrate Judge.

On February 22, 2024, plaintiff filed a response to defendant May's objections to the PF&R.  <u>See</u> Plaintiff's Reply to Defendant Sandra May's Objections to the Proposed Findings and Recommendations, ECF No. 45 ("Pl. Reply to May Obj.").

### III. Standard of Review

#### a.   PF&R Standard of Review

Under Federal Rule of Civil Procedure 72(b), "a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b). A district judge "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Id. In particular, "a general objection . . . is insufficient to avoid waiver." Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003) (noting that "other circuits have held that the failure to raise an objection sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute waives any appellate review" (quotation marks omitted)). See also Howard v. Sec'y of Health & Human Servs., 932 F.2d 505, 508-09 (6th Cir. 1991); Lockert v. Faulkner, 843 F.2d 1015, 1019 (7th Cir. 1988).

#### b.   Motion to Dismiss Standard of Review

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) correspondingly provides that a pleading may be dismissed when

there is a "failure to state a claim upon which relief can be granted."

To survive a motion to dismiss, a pleading must recite "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Monroe v. City of Charlottesville, 579 F.3d 380, 386 (4th Cir. 2009) (quoting Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008)). In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted).

A district court's evaluation of a motion to dismiss is underlain by two principles. First, the court "must accept as true all of the factual allegations contained in the [pleading]," and consider only those allegations. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Twombly, 550 U.S. at 555-56). Such factual allegations should be distinguished from "mere conclusory statements," which are not to be regarded as true. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). Second, the court must "draw[] all reasonable

11

factual inferences . . . in the [nonmovant's] favor." <u>Edwards</u> <u>v. City of Goldsboro</u>, 178 F.3d 231, 244 (4th Cir. 1999).

IV.  Discussion

Plaintiff and defendant May have each filed objections to various points made and conclusions drawn in the PF&R, and the court will address each separately.

a.  Plaintiff's Objections

Plaintiff articulates five responses to the PF&R in his filing of objections:

1. Plaintiff objects to the PF&R's conclusion that he failed to state a plausible Eighth Amendment claim against defendant Wexford, <u>see</u> Pl. Obj., at 1-2;

2. Plaintiff addresses and supplements the retaliation claim identified in the PF&R, <u>see</u> <u>id.</u>, at 3;

3. Plaintiff objects to the PF&R's conclusion that he failed to state a plausible Eighth Amendment claim against defendant Ames, <u>see</u> Pl. Obj., at 4;

4. Plaintiff objects to the PF&R's refusal to address events that occurred after the complaint was filed

inasmuch as he predicted those events would occur, see Pl. Obj., at 5;[5] and

5. Plaintiff objects to the PF&R's conclusion that he failed to state a plausible Eighth Amendment claim against defendants May and Givens, see Pl. Obj., at 5-7.

In analyzing plaintiff's objections, the court notes that it is required to interpret pro se documents liberally, holding those documents to a less stringent standard than those drafted by counsel and construing such documents in a favorable manner in determining whether they provide a basis for relief.  See e.g., Boag v. MacDougall, 454 U.S. 364, 365 (1982); Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978).  Nonetheless, "[t]he 'special judicial solitude' with which a district court should view pro se complaints does not transform the court into an advocate." Weller v. Dep't of Soc. Servs. for Balt., 901 F.2d 387, 391 (4th Cir. 1990).

1.   Plaintiff's First, Third, and Fifth Objections

In his first, third, and fifth objections, plaintiff objects to the PF&R's conclusion that the complaint failed to

---

[5] Objections 4 and 5 are contained in the same "Point of Objection."  See Pl. Obj. 5-7.  Though plaintiff frames this as only one objection, the court, construing the plaintiff's filing liberally, has identified two objections therein.

state an Eighth Amendment claim against defendant Wexford, defendant Ames, and defendants May and Givens, respectively. See Pl. Obj., at 1-2 (first objection), 4 (third objection), 5 (fifth objection).  The standards that govern each claim are similar but distinct, and the court will address each in turn, reviewing the questions of law and fact presented de novo.

As a preliminary matter, the court notes that plaintiff supports these objections by reiterating facts alleged in the complaint, as well as certain allegations which were stated for the first time in his response to the motions to dismiss or in his objection, including references to certain Wexford policies.  The court, at this stage, can only consider allegations articulated in the complaint.  See Twombly, 550 U.S. at 555, 570.

The defendants and the Magistrate Judge interpreted plaintiff's complaint as asserting claims of deliberate indifference to his serious medical needs in violation of his right under the Eighth Amendment of the United State Constitution to be free from cruel and unusual punishment.  See PF&R at 7-8.  Though not stated by plaintiff, the vehicle for such a claim is 42 U.S.C. § 1983, which provides a "method for vindicating federal rights elsewhere conferred by" the United

14

States Constitution.  <u>Baker v. McCollan</u>, 443 U.S. 137, 144 n.3 (1979).

To state a claim under § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988).

To state a claim that his Eighth Amendment right to be free from cruel and unusual punishment has been violated, a plaintiff must establish that the defendant demonstrated "deliberate indifference" to his serious medical needs.  <u>Farmer v. Brennan</u>, 511 U.S. 825, 834-37 (1994); see <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976).  Not every "claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment."  <u>Estelle</u>, 429 U.S. at 105.

To sustain an Eighth Amendment claim in the prison conditions context, a prisoner must show two things: (1) "the deprivation alleged must be, objectively, 'sufficiently serious'" such that it "result[ed] in the denial of 'the minimal civilized measure of life's necessities,'" and (2) the "prison official has a 'sufficiently culpable state of mind,'" meaning that the official acted with "'deliberate indifference' to inmate health or safety."  <u>Farmer</u>, 511 U.S., at 834.

15

To establish that a prison official acted with deliberate indifference to a serious medical need of a prisoner, "the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990), overruled on other grounds Fidrych v. Marriott Int'l, Inc., 952 F.3d 124 (4th Cir. 2020).  Deliberate indifference "may be demonstrated by actual intent or reckless disregard," but "mere negligence or malpractice does not violate the Eighth Amendment.  Id., at 851-52.  "A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position."  Id.  Serious medical needs are those which have "been diagnosed by a physician as mandating treatment, or [that are] so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Gaudreault v. Munic. of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990).

### i. First Objection – Wexford

Wexford is a medical provider that contracts with the WVDCR, a state agency that oversees MOCC, and it is accordingly subject to the deliberate indifference standard as a "person acting under color of state law."  Atkins, 487 U.S., at 42

(explaining that a private entity which contracts with the state
to provide medical services acts "under color of state law").
However, "[a] private corporation is liable under § 1983 <u>only</u>
when an official policy or custom of the corporation causes the
alleged deprivation of federal rights."  <u>Austin v. Paramount</u>
<u>Parks, Inc.</u>, 195 F.3d 715, 728 (4th Cir. 1999) (emphasis in
original) (extending "municipal liability" requirements of
<u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658 (1978), to § 1983
liability of private corporations).  Accordingly, to
sufficiently state a claim that a private entity acting under
color of state law has violated his Eighth Amendment rights,
plaintiff must sufficiently plead facts which, drawing all
inferences in his favor, establish the existence of a corporate
policy or custom that allegedly caused his injury.  <u>Revene v.</u>
<u>Charles Cnty. Comm'rs.</u>, 882 F.2d 870, 875 (4th Cir. 1989).
Pleading a "single act . . . cannot suffice, standing alone, to
establish the existence of such a policy."  <u>City of Okla. City</u>
<u>v. Tuttle</u>, 471 U.S. 808, 823-24 (1985).

Plaintiff objects to the PF&R's conclusion that he
failed to state a claim against the Wexford defendants under the
above standard.  In support, plaintiff asserts that he pled that
"Defendant Givens has allowed the [p]laintiff to be treated in a
manner which is indifferent to other prisoners," and that he

17

"sufficiently alleged that injury to the [p]laintiff was caused by removal of KOP medications." Pl. Obj., at 1, 2. He further reiterated his allegation that "on May 17, 2022, when the [p]laintiff's other KOP's (sic) were renewed, the blood pressure medications were also returned to KOP status. But [w]hen those medications were due to be renewed, [p]laintiff was told only Defendant May could renew those." Id. at 2. Accordingly, plaintiff asserts, the complaint established "a continuing violation of the KOP program." Id.

Plaintiff's complaint, even construed liberally, did not allege that Wexford had a policy or custom that gave rise to the injury complained of, nor did it allege facts that could give rise to an inference of such a policy.[6] Accordingly, the court agrees with the PF&R's conclusion that plaintiff failed to state a claim under § 1983 against Wexford.

### ii. Third Objection — Ames

Plaintiff's third objection is that the PF&R incorrectly concluded that he failed to state an Eighth Amendment claim against supervisor Donnie Ames under § 1983.

---

[6] The court notes that in plaintiff's objections and in his motion to amend the complaint, he appends and references Wexford policies regarding KOP medications. Because these were not alleged or referenced in the yet-unamended original complaint, on which the pending motions to dismiss and objections are based, the court cannot rely upon them here.

To establish such a claim against a non-medical prison official, a plaintiff must again plead that the official acted with "deliberate indifference" to the inmate's "serious medical needs."  See Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008). A plaintiff must also show an "affirmative causal link" between the supervisor's action or inaction and the particular constitutional injuries alleged.  See Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994).  To demonstrate such indifference, a plaintiff must show the official had "actual knowledge of the risk of harm to the inmate" and that the officer "recognized that his actions were insufficient to mitigate the risk of harm to the inmate arising from his medical needs."  Id. (internal quotations omitted).  Further, a non-medical prison official, such as Ames in this matter, is generally "entitled to rely upon their health care providers' expertise."  Miltier, 896 F.2d, at 854.

In the complaint, the extent to which plaintiff alleges facts relevant to Ames' actions is as follows:

> On May 9, 2022, I submitted my grievance to
> the Unit Manager. At that level my grievance
> was referred to defendant Pamela Givens, who
> failed to address the issues presented in
> the grievance.
>
> On May 12, 2022, I appealed to the
> Superintendent. At that level defendant
> Ames' reply incorrectly stated, "[y]ou have
> refused follow-ups and have not been taking

> your medication. You should follow plan that
> was set-forth by the provider." Again, the
> facts within the grievance were ignored
> completely.

Complaint, at 2.  The grievance form itself did not present defendant Ames with sufficient information to establish knowledge of a serious medical condition.  See id., at Ex. 1, at 1 (grievance form).  At the most, it indicated that defendant May had required him to take his pills at the pill line rather than have the pills KOP, and it abstractly referenced a "breathing problem," without more.  Id.  Alone, this is insufficient to establish that defendant Ames had or should have had actual knowledge that defendant had a "serious medical condition" that necessitated treatment.  See Miltier, 896 F.2d, at 855 (affirming judgment in favor of prison wardens where the "complaint is directed at the prison physicians who actually performed the treatment, while the wardens are parties, not for having failed to provide treatment, but on a theory of respondeat superior.").

Accordingly, based only on the allegations in the complaint and references drawn therefrom,[7] plaintiff failed to state a claim against defendant Ames.

---

[7] In his objections, plaintiff again almost entirely references and relies upon facts that allegedly occurred both after the complaint was filed and after the PF&R was issued.  See Pl. Obj., at 4.  The court cannot, at this

iii. Fifth Objection – May and Givens

In plaintiff's fifth objection, he objects to the PF&R's conclusion that he failed to state an Eighth Amendment claim under § 1983 against defendants May and Givens.

As to defendant May, plaintiff's complaint alleges, in summary, (1) that he notified May that he had a "breathing problem" and his existing prescription drove his "blood pressure [too] low," (2) May changed his prescription and required plaintiff to take the new medication at the pill line; (3) May ordered an X-ray and "breathing tests" which did not reveal any problems; (4) May ordered two EKGs, one of which was inconclusive and the other revealed a "[h]eart [m]urmur and [a]rrythmia"; (5) May prescribed a blood thinner to address both, which caused "painful skin eruptions," so plaintiff stopped taking it despite being told by May that "[he] would die without it"; (6) after plaintiff complained to defendant Givens about May's course of treatment and alleged failure to address his breathing problem head on, he stopped taking the blood thinners; and (7) May changed his blood thinners from KOP to pill line to "make sure they are taken, and to see if the medication is working appropriately." Complaint, at 3-4. May

---

juncture, rely upon those allegations because defendants have not had an opportunity to address them.

also later prescribed an inhaler to address plaintiff's
persistent breathing issues.  Complaint, at 9.

As pled, these facts are insufficient to establish an
Eighth Amendment claim under the deliberate indifference
standard.  Even assuming — without deciding — that plaintiff
presented a "serious medical problem" and that May knew of the
risks associated therewith, the facts alleged indicate that
defendant May sought a course of treatment to address his
medical issues that she believed was adequate.  See Iko, 535
F.3d, at 242 ("[T]he officers must have actually known that
their response was inadequate to address [the inmate's] needs")
(emphasis in original).  May's decision to switch plaintiff's
medication from KOP to pill line appears to be the crux of
plaintiff's complaint.  However, the articulated reason for that
change was to affirmatively provide the care she felt most
appropriate.  Plaintiff complains this change was medical
malpractice and that maintaining KOP status was more
appropriate.  Such a claim, however, fails to allege deliberate
indifference to a serious medical problem.  According to
plaintiff's complaint, May required the medications be taken at
the pill line to ensure plaintiff took them as she tried to
treat his medical issues.  Plaintiff's claim is thus
insufficient to establish a claim of deliberate indifference.

See Estelle 429 U.S. at 105-06 (holding an inmate does not have a right to the medical care of their choosing and mere medical malpractice does not qualify as deliberate indifference). Plaintiff has accordingly failed to state an Eighth Amendment claim against defendant May under § 1983.

As to defendant Givens, plaintiff has alleged two actions that give rise to his Eighth Amendment claims: (1) in response to plaintiff's grievance that May changed his blood pressure medication from KOP to pill line, Givens upheld May's decision, and (2) Givens allegedly knowingly failed to ensure that a doctor was available for plaintiff. See Complaint, at 4, 5. The PF&R found that neither amounted to an Eighth Amendment violation. See PF&R at 16-17.

The PF&R found that plaintiff's first claim was an improper claim of respondeat superior, inasmuch as "[t]he claim alleges nothing beyond her role in denying [p]laintiff's grievance seeking treatment by an alternative provider, which in and of itself is insufficient to establish Eighth Amendment liability." PF&R at 17 (citing Lowe v. Matheney, No. 2:13-cv-22416, 2015 WL 5795867 *9 (S.D. W. Va. Sept. 30, 2015) (Goodwin, J.) (holding, as inadequate, claims involving supervisory liability claim based only upon denial of grievances). However, the Fourth Circuit has held that supervisors may be held liable

for their actions where a supervisor, by her own conduct, is
deliberately indifferent to or tacitly authorizes constitutional
violations.  See Shaw v. Stroud, 13 F.3d 791 (4th Cir. 1994).
Inasmuch as a denial of a grievance is an independent
supervisory action that could plausibly be the manifestation of
deliberate indifference to or tacit approval of a constitutional
violation, such a denial could constitute an independent
constitutional harm.  Such a denial must thus be analyzed under
the standards of supervisory liability under § 1983, as set
forth above.  See supra, at 18.  Even under that standard
plaintiff's first allegation against Givens fails: plaintiff's
mere allegation that Givens rejected his grievance, without
greater detail, is insufficient to establish that she
subjectively knew of an objectively serious risk of harm.  The
grievance merely asked (1) to see a doctor, (2) to have his KOPs
restored, and (3) have his "breathing problem addressed."  See
Grievance, ECF No. 1-1, at 1.  This is insufficient to establish
liability under the high standard of deliberate indifference.

      The PF&R found plaintiff's second allegation against
Givens meritless on the basis that an inmate has no right to the
medical care of his choosing.  PF&R at 16 (citing Estelle, 429
U.S., at 105-06).  Plaintiff did not specifically object to this
conclusion.  Though it is true that a plaintiff has no right to

the medical care of his choosing, and denying an inmate the course of treatment he prefers is not a constitutional harm, it is "well settled" that the state has an obligation to provide "reasonable" medical care to its prisoners.  Goff v. Bechtold, 632 F.Supp. 697, 698 (1986) (citing Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977).  Because plaintiff has no constitutional right to his preferred course of treatment, plaintiff has not suffered an Eighth Amendment injury with respect to the course of monitored treatment made available to him but which he chose to reject.

### 2.   Plaintiff's Second Objection

The PF&R found that plaintiff had adequately stated a First Amendment retaliation claim against defendant May.  See PF&R at 17-19.  In plaintiff's second "[p]oint of [o]bjection," he notes that he "has argued the [Eighth] Amendment violations against all Defendants," and he seeks to "stand[] on those objections and address[] the First Amendment [v]iolations, against all [d]efendants, as an amendment."  Pl. Obj., at 3.

A plaintiff's claims "must be alleged, if at all, in the complaint," and "[t]hey cannot be raised for the first time in [his] objections."  Wilkerson v. Target Corp., 578 F. Supp. 2d 835, 837 (S.D.W. Va. 2008); see also Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998) ("The district court

is under no obligation to discover or articulate new legal theories for a party challenging a report and recommendation issued by a magistrate judge.").

It appears that plaintiff is not objecting to the PF&R's treatment of his retaliation claim; rather, he is seeking to supplement that claim by providing additional facts and argument.  An amendment proposed at this stage is not the appropriate vehicle to do so.  Accordingly, this objection is overruled.

### 3.    Plaintiff's Fourth Objection

Plaintiff's fourth objection, found in the first, third, fifth and later paragraphs of his fourth "[p]oint of [o]bjection," argues the PF&R was incorrect as to its finding that he failed to state an Eighth Amendment claim against May because, he now says, he suffered a heart attack due to his possible congestive heart failure after the filing of the complaint.  Pl. Obj., at 5-7.  This objection relies upon facts beyond the scope of the complaint, and it is thus overruled.

### b.    Objections by Defendant Sandra May

Defendant May objects to the PF&R's finding that plaintiff sufficiently stated a First Amendment retaliation

claim against her.  See May Obj., ECF No. 38.  May argues that the PF&R overstepped by acting as an advocate for plaintiff, rather than merely liberally construing his filings.  Id., at 3-4.  May also argues that even if plaintiff made such a claim, it should be dismissed.  Id., at 4-5.  Plaintiff responded to May's objections, seeking to buttress his First Amendment claim with facts contained in the complaint and facts alleged outside of the complaint or that occurred after its filing.  See Pl. Reply to May Obj.

May's first argument that the PF&R exceeded its prerogative by finding a First Amendment claim is unpersuasive. See Boag v. MacDougall, 454 U.S. 364, 365 (1982); Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978).  The Fourth Circuit has held that "a pro se complaint[] should not be dismissed summarily unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Leeke, 574 F.2d, at 1151 (internal citations omitted).  It has similarly directed courts to "consider [a pro se § 1983] case on the merits assuming that the complaint is amended to come within these statutes," manifesting a willingness to entertain claims that, as pled, failed to meet every standard required.  Id. (internal citations omitted).  "A district court is not required to act as an advocate for a pro

se litigant; but when such a litigant has alleged a cause of
action which may be meritorious . . . the district court should
afford him a reasonable opportunity to" clarify limited aspects
which may be lacking.  Id., at 1152-53.  Though plaintiff's
First Amendment retaliation claim against May under § 1983 was
not specifically pled as such, PF&R identified it by liberally
interpreting plaintiff's complaint and finding an attempt to do
so.  See Leeke, 574 F.2d, at 1151.  Accordingly, May's first
objection is overruled.

However, whether such a claim is adequately pled, as
addressed in May's second objection, is a separate question.  To
establish a First Amendment retaliation claim under § 1983, the
plaintiff must plead (1) that he engaged in protected First
Amendment activity; (2) that a defendant took some action that
adversely affected his First Amendment rights; and (3) that
there was a causal relationship between his protected activity
and the defendant's conduct.  See Martin v. Duffy 977 F.3d 294,
298-99 (4th Cir. 2020) ("Martin II").  It has been noted that
retaliation claims in the prison context "should be treated with
skepticism."  Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir.
1996).

Here, a liberal reading of the complaint indicates
that plaintiff has complained that after filing a grievance —

protected First Amendment activity, see Booker v. S.C. Dep't of Corr., 855 F.3d 533, 546 (4th Cir. 2017) — May began a "course of harassment." Complaint, at 4. This harassment, plaintiff alleges, was that, after plaintiff's meeting with Givens, May called him to medical to "request that [p]laintiff continue the blood thinner," which plaintiff declined, arguing that requiring him to take it at the pill line instead of KOP was "punishment." Id. The court notes that the plaintiff had in his complaint alleged that this same blood thinner "caused painful skin eruptions that resembled burns." Id. at 3. Plaintiff acknowledged in his complaint that May justified both continuing the requirement to take his medication and changing his medication from KOP to pill line by offering a non-retaliatory motive: She felt that plaintiff "would die from blood clots" without it, and he was not properly taking such medication when it was KOP. Complaint, at 3, 4.

Plaintiff also seems to allege that May retaliated by "stopping [his] crucial blood pressure medications." Complaint, at 5. However, plaintiff's pleading also indicates that he had refused to take those medications because he was required to do so at the pill line, which he refused. Id. Plaintiff's complaint never asserts that May declined to renew his prescriptions, only that she required he take them at the pill

line.[8]  Plaintiff has failed to plead a causal relationship between his grievance and any allegedly retaliatory action by May.

Accordingly, plaintiff has failed to state a First Amendment retaliation claim under § 1983, and May's objection is sustained.

## V.   Conclusion

Based on the foregoing, the court has found that plaintiff has failed to state an Eighth Amendment or First Amendment claim under § 1983 against Wexford, May, Givens, or Ames in his original complaint.  The court GRANTS Wexford Defendants' Motion to Dismiss, ECF No. 15, and Ames's Motion to Dismiss, ECF No. 20.

It is ORDERED that all of plaintiff's claims in his original complaint be, and hereby are, DISMISSED.  The court further ORDERS that this matter remain referred to the Magistrate Judge to proceed on plaintiff's motion to amend his complaint, and that the Magistrate Judge determine whether

---

[8] Even in his Motion to Amend, which the court does not substantively analyze herein, plaintiff equates May "with[olding] crucial medication" with May "discontinuing the [p]laintiff's KOP's (sic) for [21] months."  Pl. Mot. to Amend, at 2, 4, ECF No. 41.

plaintiff has therein meritoriously pled claims based upon facts that occurred after the filing of his original complaint.

The Clerk is directed to transmit copies of this order to all counsel of record, any unrepresented parties, and the Magistrate Judge.

ENTER: March 29, 2024

John T. Copenhaver, Jr.
Senior United States District Judge